MINA ORTEGA,

      Plaintiff,

vs.                                       USDC Civ. No. 18-111 MV/KK

NEW MEXICO LEGAL AID, INC.;
ED MARKS; SIEMPRE UNIDOS EN
PROGRESO; UAW LOCAL 2320
INTERNATIONAL UNITED AUTO
WORKERS; DONIS BORKS; GORDON
DEANE; ALICIA CLARK; AFL-CIO,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

Plaintiff Mina Ortega, a former employee of New Mexico Legal Aid, Inc. (NMLA), filed this lawsuit to vindicate claims arising out of the termination of her employment and the manner in which her grievance was handled by her union, Defendant Siempre Unidos en Progreso and the union's representatives. **THIS MATTER** is before the Court on three motions to dismiss: (1) Defendants Union, Borks, Deane and Clark's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on April 24, 2018 (Doc. 15), to which Plaintiff responded on June 25, 2018 (Doc. 33), and as to which the Union, Borks, Deane and Clark replied on July 10, 2018 (Doc. 39); (2) the Motion to Dismiss Plaintiff's Claims Against New Mexico Legal Aid & Ed Marks and Memorandum Brief in Support, filed on April 24, 2018 (Doc. 16), to which Plaintiff responded on June 27, 2018 (Doc. 35), and as to which NMLA and Ed Marks replied on July 19, 2018 (Doc. 46); and (3) the Motion to Dismiss Plaintiff's Claims Against Ed Marks, Individually and as Director of New Mexico Legal Aid,

---

[1] United States District Judge Martha Vazquez entered an Order of Reference referring this case to the undersigned Magistrate Judge Kirtan Khalsa to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  (Doc. 51)

Inc., and Memorandum Brief in Support, filed on April 24, 2018 (Doc. 17), to which Plaintiff responded on June 27, 2018 (Doc. 34), and as to which Ed Marks replied on July 12, 2018 (Doc. 41). Each motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 15 at 1; Doc. 16 at 5; Doc. 17 at 3.) The Court also considers Plaintiff's Motion for Leave to File Surreply to NMLA Defendants' Motion to Dismss Plaintiff's Amended Complaint (Doc. 52) filed on August 6, 2019), to which the NMLA Defendants responded on August 22, 2018 (Doc. 53), and as to which Plaintiff replied on September 10, 2018 (Doc. 57).

## I.      Standards Governing a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In undertaking this analysis, the Court considers "the complaint as a whole, along with the documents incorporated by reference into the complaint," construes all well-pled allegations in the light most favorable to the plaintiff. *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015). "Well-pled" means that the allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts "disregard conclusory statements and look only to whether the remaining . . . factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015).

## II.    Background[2]

Plaintiff was employed by NMLA as a staff attorney from October 27, 2008 until January 30, 2014, when she was discharged on the ground of alleged gross misconduct.  (Doc. 7 at 2-3, 16.)  Defendant NMLA is a non-profit corporation of the State of New Mexico, with its principal office in Albuquerque, New Mexico.  (Doc. 7 at 2.)  Defendant Ed Marks is the Executive Director of NMLA.  (Doc. 7 at 2.)  NMLA is party to a collective bargaining agreement with Defendant Siempre Unidos en Progreso, a Unit of the National Organization of Legal Services Workers/AUW Local 2320 International United Auto Workers, AFL-CIO (the Union).  (Doc. 7 at 2.)  Defendant Alicia Clark was the grievance chair for the Union; Defendant Donis Borks was the Union organizer and representative; and Defendant Gordon Deane was the Union president.[3] (Doc. 7 at 2-3.)

The Collective Bargaining Agreement between NMLA and the Union (the CBA) governs employee discipline, discharge, and grievance processes, and the following CBA provisions are relevant to Plaintiff's claims and allegations. [4]

Article 5.3 of the CBA, which governs "progressive discipline," provides that:

   a.  The Employer may discipline an employee only for just cause after investigating the basis for the disciplinary action.

   b.  Discipline shall not be used in an arbitrary and capricious manner.

---

[2] The background information that follows is derived from Plaintiff's Amended Complaint for Wrongful Termination, Breach of Contract and breach of Duty of Fair Representation (Doc. 7) (the Complaint) which is, in some respects, confusing and unnecessarily detailed.  Additional facts are supplied, as appropriate, in the Analysis.

[3] The Court will refer to Clark, Borks, and Dean collectively as "the Union Defendants."

[4] The CBA is attached as an exhibit to the Union and the Union Defendants' Motion to Dismiss.  (Doc. 15-2.)  "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  *GFF Corp., v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Here, however, Plaintiff questions the authenticity of the CBA, generally, and notes, as well, that its authenticity is not certified.  (Doc. 33 at 5.)  Exempted from Plaintiff's authenticity-related objection are Articles 5 and 6 of the CBA.  (Doc. 33 at 5.)  Thus, to the extent that it is useful to the Court's analysis, the Court considers these indisputably authentic provisions of the CBA.

    c.   Any and all disciplinary procedures shall be commenced within five (5) days of the alleged infraction or its discovery, whichever is later. Intervening leave time taken by the supervisor involved or the employee tolls the five day period."

    d.   Suspension for gross misconduct are (sic) exempt from disciplinary procedures and are instead subject to Article 5.5(b)[.]

(Doc. 15-2 at 10.)

Article 5.6 governs "discharge" and it provides that

An employee, not on probation,[5] may be discharged only for just cause and if one of the two following circumstances exists:

    a.   An employee, not on probation, may be discharged only for one of the following two circumstances:

        1.   The Employer has complied with Article 5.4[6] and 5.5[7] in their entirety and the employee is still in noncompliance; or

        2.   Gross misconduct, as defined in Section 5.7[.]

    b.   Upon being contacted by any prospective Employer for a job reference for a discharged persons, the Employer will make no comment about the employee other than to confirm fact and dates of employment, job title and whether or not the individual is eligible for rehire, if asked.

(Doc. 15-2 at 11-12.)

---

[5] Plaintiff was not on probation when she was discharged. (Doc. 7 at 2.)

[6] Article 5.4 governs "written warnings" and provides, in substantial part:

An employee is entitled to three (3) [w]ritten [w]arnings. If the misconduct that was the subject of a written warning continues, the Employer may issue another written warning to the employee. The three (3) written warnings shall be administered in the following way:

    a.   Each written warning must include a description of the alleged infraction or discovery thereof, a specific description of the incidents or behavior precipitating the action, including relevant times, dates, and places, and shall include all documents and material upon which the Employer is relying.

    b.   Within thirty (30) days of the written warning, the Employer must provide the employee with a written remediation or compliance plan that addresses the problems noted in the written warning. . . .

    c.   Each written warning shall be subject to the Grievance Procedures

    d.   Each written warning must include a statement informing the employee that further infractions may result in further discipline, and shall specify the potential discipline that may be imposed.

    e.   If an employee does not receive a second or third written warning within six months from the date of the last written warning, all prior warnings shall be purged from the employee's personnel file and not used in any future disciplinary procedure.

    (Doc. 15-2 at 10-11.)

[7] Article 5.5 pertains to suspension, and is not relevant here.

Article 5.7 of the CBA Provides as follows:

> GROSS MISCONDUCT: includes but is not limited to: job related theft, intoxication, violent behavior, including threats; concealment or intentional destruction of client records or documents, unless permitted by program policies; illegal harassment; unauthorized outside practice of law; charging clients for services; and job related willful endangerment of employees, or clients.
>
> a. An employee may be immediately suspended without pay for gross misconduct, pending a hearing before the Executive Director or his or her designate. The employee may also be discharged. If the employee is to be discharged, the Employer will provide the employee with written notice of the reasons for the discharge. Said notice will be maintained permanently in the employee's personnel file, unless the discharge is overturned through the grievance procedure.
>
> b. An employee shall have the right to Union representation at all stages of discharge for gross misconduct proceedings.
>
> c. The Union or the Union on behalf of the employee may appeal a suspension or a discharge decision made by the Executive Director by requesting, within fifteen (15) working days of the receipt of the Director's written decision, that a mediator be selected through the Federal Mediation and Conciliation Service pursuant to mediation provision in Article 6.9(d).

(Doc. 15-2 at 12.)

Pursuant to Article 6.9 of the CBA, the Union may pursue a formal grievance process on behalf of a discharged employee in four steps: a formal written grievance to the supervisor, a formal written appeal of the grievance to the executive director, mediation, and arbitration. (Doc. 15-2 at 13-14.)

In its notice stating the grounds for discharging Plaintiff, NMLA cited

> (1) gross misconduct including but not limited to gross and repeated insubordination regarding essential, case-related tasks despite clear direction from your managing attorney and NMLA Litigation Director, (2) concealment or intentional destruction of client records or documents, (3) job related willful endangerment of New Mexico Legal Aid, NMLA employees and NMLA clients[,] and . . . suspected falsification of NMLA records.

(Doc. 7 at 14-15.) Plaintiff asserts that the allegations in the notice of discharge stemmed from two discrete incidents in December 2013 and January 2014, respectively, neither of which constituted gross misconduct as defined in the CBA.

The first incident occurred in December 2013[8], and involved an issue concerning Plaintiff's time sheet. (Doc. 7 at 15-17.) Plaintiff alleges that although this incident—in which Plaintiff was, in sum, accused of falsifying her timesheet—was resolved 43 days before she was discharged, and although it was not specifically identified in her discharge notice, a letter from NMLA's counsel (received by Plaintiff or the Union during the grievance process) cited the time-sheet incident as grounds for Plaintiff's discharge. (Doc. 7 at 16.) In that regard, Plaintiff alleges that although she was disciplined in an untimely[9] written warning related to the time-sheet incident, "NMLA [later] called it gross misconduct and discharged [her]." (Doc. 7 at 17.)

The second incident occurred on January 17, 2014, and involved an argument between Plaintiff and her supervisor over a case file.[10] The file incident resulted in Plaintiff's supervisor giving her a written warning on January 18, 2014. (Doc. 7 at 17.) On January 28, 2014—eleven days after the incident,[11] Plaintiff's supervisor gave her a second written warning pertaining to the file incident; the second warning stated that Plaintiff had become belligerent, and berated and yelled at her supervisor—conduct that Plaintiff denies. (Doc. 7 at 19.) This warning was issued pursuant to Article 5.4 of the CBA, which governs "written warnings," and provides, in part, that

---

[8] In certain paragraphs of Plaintiff's Complaint, Plaintiff alleges that the incident occurred in December 2014, which is an obvious typographical error since Plaintiff was discharged in January 2014. (see Doc. 7 at 15 ¶¶77-78, 80.)

[9] Plaintiff alleges that she was warned about the time-sheet incident twenty-three days after it occurred. (Doc. 7 at 16.)

[10] Plaintiff alleges that the argument unfolded when her supervisor asked her for a file on a day when Plaintiff was swamped and was preparing for a meeting outside the office and not expecting to return. (Doc. 7 at 17.) Before she left the office, Plaintiff asked her supervisor for an extension of time to gather the file. (Id.) After Plaintiff left the office, her supervisor, having not responded to Plaintiff's request for an extension, sent her three emails demanding the file. (Id.) The allegations in Plaintiff's Complaint detail a contentious exchange between Plaintiff and her supervisor. (Doc. 7 at 17-18.)

[11] Plaintiff contends that this warning was untimely under Article 5.3 of the CBA, which requires any and all discipline to be commenced within five days of the alleged infraction. (Doc. 7 at 19; Doc. 15-2 at 10.)

an employee is entitled to three written warnings—each of which "must include a description of the alleged infraction or discovery thereof, a specific description of the incidents or behavior precipitating the action[.]" (Doc. 7 at 19; Doc. 15-2 at 10-11.)

Plaintiff alleges, further, that NMLA "appears to have . . . dropped" the allegation of "concealment or intentional destruction of client records" which, she alleges, was "an outrageous and false accusation." (Doc. 7 at 19.)

After being discharged from employment on January 30, 2014, Plaintiff asked Union Organizer and Representative Donis Borks whether she could challenge her termination in court instead of pursuing the grievance procedure outlined in the CBA. (Doc. 7 at 3.) Mr. Borks advised Plaintiff that she could not challenge her termination in court, but that she could file a lawsuit to pursue any other claims that she may have as a result of her discharge. (Id.)

On February 19, 2014, Union Grievance Chair Alicia Clark submitted a grievance on behalf of Plaintiff. (Doc. 7 at 3.) In a February 25, 2014, letter NMLA's counsel alerted the Union (Ms. Clark particularly) to NMLA's position that the Union had failed to comply with Article 5.7(c) of the CBA, which requires that the Union request mediation within 15 days of an employee's discharge. (Doc. 7 at 4.) The letter stated that mediation was the only remedy available to Plaintiff. (Id.) And it stated, as well, that the Union had erroneously filed the grievance under Articles 5.3 (governing progressive discipline), 6.4 (governing informal resolution of disputes between employees and their supervisors), and 5.6 (governing discharge[12]). (Id.; Doc. 15-2 at 10-13.) This notwithstanding, it is clear from the allegations in the Complaint that the grievance process continued.

_____

[12]Article 5.6(a)(2) provides that an employee may be discharged only for just cause and if the employee has committed "gross misconduct" as defined in Article 5.7. Article 5.7 contains specific provisions governing discharge on the ground of "gross misconduct." (Doc. 15-2 at 12.)

After her grievance had been filed, Plaintiff discovered a provision of the CBA, that provides: "[n]othing contained herein shall limit or otherwise exclude any grievant from seeking redress from any government agency, regulatory body or court of law," and which, therefore, contradicted what Mr. Borks had told her regarding pursuing her claims in court. (Doc. 7 at 3; Doc. 15-2 at 13.) Plaintiff brought this provision to the attention of Ms. Clark and Mr. Borks; and, in a March 14, 2014, letter, Ms. Clark advised Plaintiff that she was not prohibited under the CBA from seeking redress in court, but the Union was not required to represent Plaintiff in that forum or to do legal research on her behalf "on that issue." (Doc. 7 at 3.) Two months later, on May 14, 2014, Ms. Clark changed her position, advising Plaintiff in a letter that all employment contract issues were governed by the CBA's binding arbitration clause and, therefore, Plaintiff could only pursue in court those claims not covered by the CBA. (Doc. 7 at 3.)

In an April 4, 2014, letter NMLA's counsel responded to the Union's "Step 3 Written Appeal" (which, as applied to a discharged employee, is the second step in the grievance process in which the Union presents the grievance to the Executive Director). (Doc. 7 at 7; Doc. 15-2 at 14.) Mr. Borks and Ms. Clark held a conference call with Plaintiff to discuss the contents of the letter. (Id.) Mr. Borks abruptly ended the conference call without learning Plaintiff's response to "many" of NMLA's allegations. (Id.) Mr. Borks and Ms. Clark were supposed to schedule another conference with Plaintiff to continue the discussion, but they failed to do so. (Id.)

Mr. Borks and Ms. Clark scheduled a mediation related to Plaintiff's grievance for June 10, 2014. (Doc. 7 at 8.) Plaintiff was dissatisfied with the manner in which the Union handled her claim, and in her Complaint, she recites several ways in which she was variously excluded from the process and ignored by Mr. Borks and Ms. Clark—including the fact that they scheduled mediation on a date that Plaintiff was unavailable, they failed to respond to Plaintiff's

requests for information regarding the defenses that they would raise on her behalf, they failed to respond to her requests regarding what investigation or research they had conducted, and they failed to gather Plaintiff's responses to NMLA's allegations against her. (Doc. 7 at 7-9.) She alleges, further, that despite her request that the Union amend her grievance to include a claim that NMLA was "trashing" her to prospective employers in violation of CBA, the Union did not amend the grievance. (Doc. 7 at 31.)

Relying on the provision of the CBA that provides that a grievant is not prohibited from seeking redress in court, Plaintiff filed a complaint in state court on June 9, 2014, for wrongful termination, breach of contract, declaratory judgment, and injunctive relief. (Doc. 7 at 10.) Except for Gordon Deane (who was not named in that lawsuit), the defendants in that lawsuit were the same as those named in the present one. (Id.) Plaintiff had the complaint served on the defendants on June 10, 2014—the day that mediation was set to commence. (Id.) These circumstances led the Union and NMLA to hold the mediation in abeyance. (Id.)

NMLA removed Plaintiff's case to this Court, and the defendants moved to dismiss Plaintiff's claims against them on the ground that Plaintiff had failed to exhaust the grievance procedures required by the CBA. (Doc. 7 at 10.) In February 2015, this Court granted Defendants' motions to dismiss.[13] (Doc. 7 at 11.) Plaintiff appealed that decision to the Tenth Circuit Court of Appeals, which affirmed the dismissal.[14] (Id.)

Plaintiff's grievance ultimately proceeded to mediation on October 13, 2016. (Doc. 7 at 27.) The mediation was unsuccessful.[15] (Doc. 7 at 27.) NMLA and the Union set an August

---

[13] *See Ortega v. New Mexico Legal Aid, Inc., et al*, 14-cv-00628-MCA-SCY (Doc. 51), filed February 17, 2015.
[14] *See Ortega v. New Mexico Legal Aid, Inc.*, 643 F. App'x 774 (10th Cir. 2016).
[15] It appears from the Complaint that the mediation ended with NMLA making a final offer, which was to be held open for ten days. However, Plaintiff alleges that Mr. Borks refused to share with her an email from the mediator documenting the settlement offer. (Doc. 7 at 27.) She also alleges that NMLA's counsel represented to the arbitrator that the parties reached a settlement agreement in mediation, but Plaintiff "reneged on the settlement because she learned she had to pay payroll taxes" which, Plaintiff alleges, is a fabrication. (Doc. 7 at 27.)

2017 arbitration date for Plaintiff's grievance.[16]  (Doc. 7 at 11, 22.)   In advance of arbitration, NMLA moved to dismiss Plaintiff's grievance on the ground that the Union had failed to comply with the deadline in Article 5.7(c) of the CBA which requires the Union to request mediation within 15 days of an employee's discharge.  (Doc. 7 at 11.)  The Union responded on June 30, 2017, arguing, among other things, that Article 5.7(c) did not apply to Plaintiff's grievance. (Doc. 7 at 12.)  Plaintiff alleges a number of ways in which the Union's response to NMLA's motion to dismiss was unsatisfactory.  Among other things, she alleges that the Union should have, but failed to, make relevant legal arguments in response to the authorities cited by NMLA and failed to argue, or to provide supporting documentation demonstrating, that:  mediation was ultimately held on October 13, 2016; that as early as June 17, 2016, the parties were discussing when mediation should be scheduled; and that the parties had agreed to hold the grievance process in abeyance pending resolution of Plaintiff's lawsuit.  (Doc. 7 at 12, 24-25.)

Plaintiff also alleges that the Union made untimely objections to exhibits upon which NMLA relied for its contention that Plaintiff, in complicity with the Union, had repudiated the grievance process.  (Doc. 7 at 12.)  And she alleges that because she was unpopular with certain union members in her office and because Mr. Borks harbored hostility toward her, personally Mr. Borks and Ms. Clark managed the entire grievance process ineffectively and treated her with hostility during that process. (Doc. 7 at 13.)

On August 2, 2017, the arbitrator granted NMLA's motion to dismiss, concluding that Plaintiff's grievance was not arbitrable because, although the grievance had been timely filed, a

---

[16] Plaintiff's allegations regarding mediation and arbitration dates are somewhat confusing.  Plaintiff alleges that mediation was held on October 13, 2016, and she alleges that mediation (by which she apparently meant arbitration) was scheduled to occur on August 30 and 31, 2017, and that arbitration was set for August 29 and 30, 2017.  (Doc. 7 at 11, 22, 25.)  The Court construes Plaintiff to allege that *mediation* was held in October 2016, and *arbitration* was set to proceed in August 2017.

corresponding request for mediation, which is required under Article 5.7(c) the CBA, was never filed. (Doc. 7 at 24.[17])

Plaintiff filed the present lawsuit on February 2, 2019. (Doc. 1.) Plaintiff raises three claims in her Complaint, which, taken together and as described below, constitute a hybrid § 301/fair representation claim. (Doc. 7.) In Count I "Breach of Contract and Wrongful Termination," Plaintiff raises a claim against NMLA on the ground that the organization wrongfully terminated her employment and, in so doing, breached the CBA. (Doc. 7 at 15-20.) In Count II "Breach of Contract" Plaintiff claims that NMLA violated the CBA by "disparaging and/or trashing" her to prospective employers. (Doc. 7 at 20-21.) And in Count III "Breach of Duty of Fair Representation" Plaintiff claims that the Union and the Union Defendants breached the duty of fair representation owed to Plaintiff under the CBA and, by various actions and inactions, caused her grievance to be dismissed as not arbitrable. (Doc. 7 at 22-31.)

### III. Overview of the Law Governing Plaintiff's Claims

It is well established that a union has duty to fairly represent employees covered by a collective bargaining agreement in enforcing the terms of that agreement. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). The union's duty of fair representation, which is enforceable as a matter of federal statutory law, includes an "obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.*; *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983) (recognizing that a lawsuit against a union for the beach of the union's duty of fair representation is implied under the scheme of the National Labor Relations Act); *Chauffeurs,*

---

[17]Article 5.7(c) provides: "The Union or the Union on behalf of the employee may appeal . . . a discharge decision made by the Executive Director by requesting, within fifteen (15) working days of the receipt of the Director's written decision, that a mediator be selected through the Federal Mediation and Conciliation Service pursuant to mediation provision in Article 6.9(d). (Doc. 15-2 at 12.)

*Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 563 (1990) ("The duty of fair representation is inferred from union's exclusive authority under the National Labor Relations Act (NLRA), . . . 29 U.S.. § 159(a)").  "A duty of fair-representation claim arises when a union that represents an employee in a grievance or arbitration procedure acts in a discriminatory, dishonest, arbitrary, or perfunctory fashion."  *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998).

It is also well "established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement."  *DelCostello*, 462 U.S. at 163. "Ordinarily . . . an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."  *Id.*  However, when the union representing the employee in the grievance process breaches its duty of fair representation, "an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding."  *Id.* at 164.  Such suits—known as a "hybrid § 301/fair representation claim" comprise two causes of action:  one against the employer for the alleged breach of the collective bargaining agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the other against the union for the alleged breach of the duty of fair representation implied under the NLRA.  *DelCostello*, 462 U.S. 164.  When an employee brings a hybrid § 301/fair representation lawsuit, "the two claims are inextricably interdependent[;]" and an employee may only prevail if she shows that her discharge was contrary to the collective bargaining agreement *and* that the union breached its duty of fair representation.  *Id.* at 164-65.  Although the employee may choose to sue the union, the employer, or both, regardless of whether she sues one, the other, or both, she must prove the same case.  *Id.* at 165.

Plaintiff's lawsuit constitutes a hybrid § 301/fair representation claim. To prevail in this claim, Plaintiff must establish: (1) conduct by the Union that amounted to a breach of its duty of fair representation and that affected the integrity of the arbitration process; and (2) that NMLA violated the collective bargaining agreement. *Jara v. Standard Parking*, 701 F. Appx. 733, 737 (10th Cir. 2017); *White v. White Rose Food*, 237 F.3d 174, 179 (2d. Cir. 2001). For the reasons that follow, the Court concludes that the allegations in the Complaint are sufficient to satisfy both of these elements.

## IV. Motion to Dismiss Filed by the Union, Borks, Dean and Clark

### A. Plaintiff's Claims Against the Individual Union Defendants Shall be Dismissed

As an initial matter, the Union and the Union Defendants argue that Mr. Borks, Mr. Dean and Ms. Clark in their individual capacities must be dismissed from this lawsuit on the ground that individual officers of unions cannot be held personally liable for the actions taken on behalf of the union, including any allegation that they breached the duty of fair representation. (Doc. 15-1 at 12-13.) Plaintiff does not attempt to argue otherwise. In *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 248-49 (1962), our Supreme Court held that agents, officer, and members of a union are exempt from personal liability for union wrongs. *Id.* at 248-249. Following *Atkinson*, courts have declined to permit individual union agents to be held liable for actions they have taken on behalf of unions. *Borowiec v. Local No. 1570*, 889 F.2d 23, 28 n.3 (1st Cir. 1989) (citing *Atkinson* for the proposition that a union representative may not be held liable for breach of the duty of fair representation based on actions taken by him on the union's behalf); *see Tamayo v. U.S. Dep't of Labor*, 129 F.3d 127, *4 (9th Cir. 1997) (unpublished) ("Union agents are not personally liable to private-sector employees for acts performed on the union's behalf in discharging their statutory duties, including the duty of fair representation."); *Arnold v Air*

*Midwest, Inc.*, 100 F.3d 857, 861-62 (10th Cir. 1996) ("[W]ith monotonous regularity, court after court has cited *Atkinson* to foreclose state-law claims, however inventively cloaked, against individuals acting as union representative within the ambit of the collective bargaining process."). Pursuant to *Atkinson* and its progeny, it is clear that the Union Defendants, in their individual capacities, cannot be held liable for breach of the duty of fair representation. Accordingly, the Court recommends dismissing Plaintiff's claims against Mr. Borks, Mr. Dean, and Ms. Clark in their individual capacities.

### B.  Plaintiff's Allegations Against the Union are Sufficient to Support Her Claim of Breach of the Duty of Fair Representation

As grounds for dismissal of Plaintiff's claims against the Union itself, the Union argues (1) that Plaintiff's Amended Complaint does not contain a prayer for relief against the Union, and (2) that the allegations in the Complaint are insufficient to establish that the Union breached its duty of fair representation. (Doc. 15-1 at 8-12; Doc. 39 at 3-11.)

### 1.  The Text of Plaintiff's Prayer for Relief is Not an Appropriate Ground for Dismissing her Claims Against the Union

In Count III of the Amended Complaint (and in the numerous allegations applicable to all claims) Plaintiff alleges a number of facts in support of her claim that the Union breached its duty of fair representation including the culminating allegation that: "[t]he Union's actions, inactions, and omission . . . constitute [a] breach of [its] duty of fair representation owed to Plaintiff, and that breach undermined the integrity of the grievance process to which Plaintiff was entitled under the CBA causing her grievance to be dismissed as not arbitrable, entitling Plaintiff to damages." (Doc. 7 at 31.) This notwithstanding, the Union argues that Plaintiff's claim against it should be dismissed on the ground that Plaintiff's prayer-for-relief statement is limited to a request for damages against NMLA. (Doc. 15-1 at 8.) In the Tenth Circuit, the

viability of a claim does not depend upon the prayer for relief. *See Daniels v. Thomas*, 225 F.2d 795, 797 (10th Cir. 1955) ("It is well settled that the prayer for relief is no part of the cause of action and that the parties are entitled to such relief and to such judgment as the complaint . . . makes out."); *Schoonover v. Schoonover*, 172 F.2d 526, 530 (10th Cir. 1949) ("[T]he prayer [for relief] forms no part of the cause of action, and . . . a pleader will be entitled to the relief made out by the case and stated in the pleadings, irrespective of what is being asked for in the prayer."). Because Plaintiff's Complaint clearly seeks relief against the Union on the ground that it breached its duty of fair representation, the fact that Plaintiff's prayer for relief is limited to a request for damages against NMLA does not, of itself, warrant dismissal of Plaintiff's claims against the Union. The Court recommends denying the Union's motion to the extent that it seeks dismissal on this basis.

**2. Plaintiff's Allegations Regarding the Union's Conduct Adequately Support a Breach of the Duty of Fair Representation Claim**

As to the substance of Plaintiff's claims, the Union argues that the allegations in the Complaint are insufficient to demonstrate that its actions were arbitrary, discriminatory, in bad faith, or perfunctory. The Court does not agree.

Summarized from the Amended Complaint and viewed in the light most favorable to her, Plaintiff's allegations regarding the Union's handling of her claim amount to the following. The day after she was discharged from NMLA, Plaintiff contacted the Union regarding options available to aggrieve the discharge. (Doc. 7 at 3.) Pursuant to Article 5.7(c) of the CBA, the Union may appeal a discharge decision within fifteen working days of the discharge by requesting that a mediator be selected pursuant to the procedures outlined in the CBA. (Doc. 7 at 4l Doc. 15-2 at 12.) The Union, through its representatives, timely filed a grievance, but failed to request a mediator as required by Article 5.7(c) of the CBA, and although the parties engaged in

mediation, the Union's failure to timely request a mediator ultimately led to the dismissal of Plaintiff's grievance at the arbitration stage. (Doc. 7 at 4, 11, 24.) When NMLA argued, in 2014, that the Union had waived the right to appeal Plaintiff's discharge by failing to comply with Article 5.7(c), Ms. Clark and Mr. Borks did not research the issue, despite Plaintiff's repeated requests that they do so. (Doc. 7 at 4.) When NMLA moved for dismissal of Plaintiff's grievance in 2017 on the same ground, the Union did not adequately research or respond to the argument. (Doc. 7 at 12.) This mishandling of Plaintiff's grievance was intentional, and it was motivated by Mr. Borks' and Ms. Clark's knowledge that Plaintiff was unpopular with certain Union members at NMLA, and by Mr. Borks' hostility toward Plaintiff. (Doc. 7 at 13-14.) Because of Plaintiff's unpopularity with the Union members, Ms. Clark and Mr. Borks did not make a real effort to overturn her discharge, instead, they "just [went] through the motions[.]" (Doc. 7 at 14.) Their lack of effort in regard to Plaintiff's grievance was further evidenced, among other ways, by their failure to prepare for mediation or research issues raised by NMLA's counsel; their failure to amend Plaintiff's grievance to include a claim that NMLA was "trashing her" to prospective employers; and their failure, despite Plaintiff's requests and inquiries, to research or prepare to address in mediation how any settlement funds would be allocated (a failure ultimately contributed to the grievance not being settled at mediation). (Doc. 7 at 4-5, 8, 28-29, 31.) The Union's disdain and disregard for Plaintiff in the grievance process was evidenced by Ms. Clark telling Plaintiff that she was not required to research the NMLA's waiver contention because it would not be a good use of her time; by Mr. Borks' and Ms. Clark's cursory dealings with Plaintiff—including failing to gather Plaintiff's responses to NMLA's allegations regarding the reasons for her discharge; their failure to communicate with Plaintiff about the grievance process—including refusing to discuss with Plaintiff what their defenses or

arguments would be, and refusing to accommodate Plaintiff's availability in scheduling mediation; by Mr. Borks' hostility in his interactions with Plaintiff; and by Mr. Borks' lack of candor with Plaintiff concerning the conclusion of the mediation, *i.e.*, whether a settlement was reached at mediation, and the content of an email from the mediator to Mr. Borks documenting the settlement offer. (Doc. 7 at 4-5, 7-8, 27.)

The Union argues that Plaintiff's unpopularity with union members in her office and Borks' display of hostility toward Plaintiff do not establish that the Union treated Plaintiff differently from other employees when it handled her grievance; that the Union is not obligated to provide documents or do legal research based merely on an aggrieved employees' demands; and that because the Union is afforded wide latitude in determining what strategies to pursue in representing an employee in the grievance process, its strategic decisions and tactical errors do not give rise to a breach of the duty of fair representation claim. (Doc. 15-1 at 10-11.) Citing case law in support of the general proposition that a union's discretionary, strategic, and tactical decisions are not grounds for a breach of duty claim, the Union argues that Plaintiff's allegations demonstrate "at best" that the Union made mistakes that worked to Plaintiff's disadvantage, but which are insufficient to support Plaintiff's claim. (Doc. 15-1 at 10-11.) *See Carrington v. United States*, 42 F. Supp. 3d 156, 164-65 (D.D.C. 2014) (holding that the court cannot intercede on behalf of the plaintiff merely because the union's reasonable legal strategy, viewed in hindsight, worked to the plaintiff's disadvantage because there was no evidence that the union acted in bad faith); *Barr v. United Parcel Serv. Inc.*, 868 F.2d 36, 43-44 (2d. Cir. 1989) (overturning a jury verdict against a union because the evidence presented at trial was that the union's purported mistakes were tactical judgments which, when taken in good faith, cannot support a claim that the union breached its duty of fair representation); *Patterson v. Int'l Bhd. of*

*Teamsters, Local 959*, 121 F.3d 1345, 1349-50 (9th Cir. 1997) (affirming summary judgment in favor of a union because the evidence demonstrated that the union's tactical decisions were reasonable, that the union aggressively pursued the plaintiff's grievance, and there was no evidence of the union's hostility or ill motive toward the plaintiff); *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3rd. Cir. 1970) (overturning a jury's verdict against a union because the evidence demonstrated that the union "undoubtedly sought in good faith to obtain [the] plaintiff's reinstatement" and "[i]t did not act in a perfunctory manner in doing so" where the representative decided not to pursue the grievance only after having conferred with his superior and confirming that the grievance was "hopeless"); *Wright v. Boeing Vertol Co.*, 704 F. Supp. 76, 79-80 (E.D. Pa. 1989) (granting summary judgment in favor of the union where the evidence demonstrated that the union gave "careful attention" to the plaintiff's grievance, "undertook extensive preparations" for the plaintiff's arbitration hearing, and pursued post-arbitration remedies, and where the errors or omissions of which the plaintiff complained were, at best, mere negligence and were otherwise reasonable strategic decisions).

In each case cited by the Union, evidence was presented to demonstrate that the at-issue mistakes and omissions were variously attributable to mere negligence, or that the respective unions had made the at-issue decisions in a reasonable and articulable exercise of union discretion vis a vis grievance processing. In those cases in which the plaintiff alleged hostility or ill will against the plaintiff by the union, such allegations were not supported by the evidence. *See, e.g. Barr*, 868 F.2d at 43 (holding that the record did not contain a "scintilla of evidence" to support the plaintiff's assertion that the union acted complicity with the employer against the plaintiff's interests); *Patterson*, 121 F.3d at 1350 ("Patterson has not produced any evidence of hostility on behalf of [the union] toward him or any motive that [the union] would have in

conspiring with [the employer] to terminate him); *Wright*, 704 F. Supp. at 81 (rejecting, for lack of evidence, the plaintiff's contention that the union mishandled his grievance because he had engaged in "political battles" with union officials); *see also Carrington*, 42 F. Supp. 3d at 162 ("Plaintiff concedes that the [u]nion representatives did not discriminate or harbor ill will towards him."). Here, upon the presentation of evidence, the Union may well demonstrate that it handled Plaintiff's grievance competently, in good faith, and pursuant to reasonable tactical decision-making and strategizing, and is not subject to second-guessing by the Court. *See Patterson*, 121 F.3d at 1349 ("If a union provides a reasoned explanation for not pursuing a protentional defense, [the court] may not second guess its decision."). However, at this stage of the proceedings, and assuming the truth of Plaintiff's allegations as the Court is bound to do in considering a motion to dismiss, dismissal is not appropriate.

Plaintiff's allegations plausibly allege that Mr. Borks and Ms. Clark, motivated by Plaintiff's unpopularity with the Union (and by Mr. Bork's particular hostility toward Plaintiff), failed to take requisite steps in its pursuit of Plaintiff's grievance and treated Plaintiff's grievance with cursory or indifferent attention, and failed to adequately investigate[18] or prepare to defend her grievance. This conduct,[19] if proven, would fall "so far outside a wide range of reasonableness" as to be "irrational or arbitrary." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) ("[A] union's actions are arbitrary . . . if, in light of the factual and legal landscape

---

[18] Plaintiff alleges that the Union failed to learn what her responses were to NMLA's allegations of wrongdoing (Doc. 7 at 8), and that despite repeated requests for information, she has had no indication from the Union that the Union's representatives had investigated her grievance, (Doc. 7 at 13, 30).

[19] The Court notes that not all of Plaintiff's allegations support her claim. For example, a union does not breach its duty of fair representation by failing to keep a grievant informed of the status of the grievance, *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975), or by failing to give the grievant an opportunity to attend a particular segment of the grievance process, *Higdon v. United Steelworkers of Am.*, 706 F.2d 1561, 1562 (10th Cir. 1983). Taken in the aggregate, and viewed in the light most favorable to her, however, Plaintiff's allegations in this regard contribute to the overarching narrative of her complaint, which is that driven by their disdain for Plaintiff, Ms. Clark and Mr. Borks treated her with hostility gave her grievance only cursory attention, and failed to adequately represent her.

at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." (citation omitted)).  Taken in the aggregate, and viewed in the light most favorable to her, Plaintiff's allegations are sufficient to plausibly show that the Union breached its duty of fair representation.  *See e.g.*, *Vaca*, 386 U.S. at 177 (holding that a union has a statutory obligation to serve the interests of its members without hostility and to exercise its discretion with complete good faith); *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 881 (9th Cir. 2007) (holding that the union's unexplained failure to perform a ministerial act that effectively extinguishes the employee's right to pursue her claim is not merely negligent, it constitutes arbitrary conduct);  *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1240, 1244 (10th Cir. 1998) (recognizing that a union's processing of a grievance is perfunctory when it gives the claim "only cursory attention"; and holding that a union breached its duty of fair representation because, among other things, the union failed to investigate or pursue the issues that the grievant believed would support his claim); *Venci v. Int'l Union of Eng'rs, Local 18*, 137 F.3d 420, 426 (6th Cir. 1998) (recognizing that a union acts arbitrarily, in violation of the duty of fair representation, by failing to take a basic and required step, such as timely filing a grievance); *Higdon v. United Steelworkers of Am.*, AFL-CIO-CLC, 706 F.2d 1561, 1562 (11th Cir. 1983) (recognizing that a union's failure to investigate a member's grievance can violate its duty of fair representation); *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1127 (5th Cir. 1980) (recognizing that the union breaches its duty of fair representation if a union representative's hostility toward the plaintiff influences his pursuit of the plaintiff's grievance); *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976) (holding that to be non-arbitrary, the union's actions must not be based upon motivations such as personal animosity or political favoritism).  Finally, because Plaintiff's grievance was ultimately dismissed based on

the Union's failure to comply with Article 5.7(c) of the CBA, the union's alleged breach undeniably affected the integrity of the arbitration process—an element of Plaintiff's claim that the Union does not refute.  *Jara*, 701 F. Appx. at 737.

## V.    Motion to Dismiss Filed by NMLA and Ed Marks

NMLA and Ed Marks[20] (the NMLA Defendants) argue that if the allegations in Plaintiff's Complaint satisfy the requisite elements of a claim against the Union, her hybrid claim nevertheless fails because the allegations do not plausibly state a claim that NMLA violated the CBA.  (Doc. 16 at 8.)  They argue, further, that the Complaint should be dismissed for violation of Rule 8(a) because it does not clearly and concisely set forth Plaintiff's claims.  (Doc. 16 at 17-20.)

### A.    The NMLA Defendants' Rule 12(b)(6) Arguments

#### 1.    Count I

In Count I, Plaintiff claims that she was discharged in violation of the CBA.  (Doc. 7 at 19.)  In support of this claim, Plaintiff alleges that the time-sheet incident and the file-incident, discussed in the background Section of this Recommendation were NMLA's only grounds for disciplining her.  Summarized, Plaintiff alleges that NMLA, having previously issued untimely written warnings[21] to her based on these incidents relabeled them "gross misconduct" as a means of avoiding the relevant time-limit and progressive discipline provisions in the CBA and effecting her immediate, wrongful discharge for conduct that does not rise to the level of "gross misconduct" as defined in the CBA.  (Doc. 7 at 15-19; Doc. 35 at 10-11.)  She alleges that the remaining allegations in the discharge notice were false, factually unsupported, and, in violation

---

[20]The NMLA Defendants do not make any arguments specifically pertaining to Mr. Marks in his individual capacity or as Executive Director or NMLA.  Instead, Mr. Marks filed a separate Motion (Doc. 17) seeking to dismiss all claims against him individually, and in his Capacity as Executive Director of NMLA.  (Doc. 17.)
[21]Plaintiff alleges that the warnings were not timely issued.  (Doc. 7 at 16-17; Doc. 35 at 10.)

of Article 5.3(a) of the CBA, in that they were posited and relied upon without a preliminary investigation. (Doc. 7 at 19.)

Stated more specifically, the time sheet incident related to an entry that Plaintiff made on her time sheet on December 2, 2013. (Doc. 7 at 15.) NMLA's human resources department addressed the matter with Plaintiff on December 17, and approved the at-issue time sheet on December 18. (Doc. 7 at 15.) On January 9, 2014, Plaintiff received a written warning about the time-sheet incident pursuant to Article 5.4 of the CBA. (Doc. 7 at 16.) Plaintiff's theory of breach pertaining to the time-sheet incident appears to be two-fold: first, she alleges that NMLA breached Article 5.3(c) of the CBA in disciplining her for the time-sheet incident because she did not receive the written warning within five days of NMLA's discovery of the infraction; secondly, she alleges that NMLA, having initially considered the time-sheet infraction grounds for a written warning under Article 5.4 of the CBA arbitrarily labeled the incident "gross misconduct" as a means to effect her immediate and wrongful discharge under Article 5.7 of the CBA. (Doc. 7 at 14-17.)

Similarly, Plaintiff alleges that the file incident, occurred on January 17, 2014, and she received a written warning from her supervisor (ostensibly invoking Article 5.4) pertaining to that incident on January 18. (Doc. 7 at 17.) On January 28 (eleven days after the incident) Plaintiff received a second written warning pertaining to the same incident, which included additional false allegations that she had become "belligerent, bereat[ed] and yell[ed] at" her supervisor. (Doc. 7 at 19.) Plaintiff alleges that because she was given a written warning pertaining to this incident, discipline for the incident was governed by Article 5.4—including, particularly, the requirement that NMLA provide her with a written remediation or compliance plan addressing the problems noted in the warning. (Doc. 7 at 17; Doc. 15-2 at 11.) Instead of

complying with the relevant Article 5 provisions, however, Plaintiff alleges that thirteen days after the file incident, NMLA "called it gross misconduct and discharged her." (Doc. 7 at 17.)

Assuming the truth of the foregoing allegations in the Complaint, and construing them in the light most favorable to her, Plaintiff has stated a claim upon which relief may be granted on the ground (perhaps among others) that her conduct did not, in fact, constitute "gross misconduct" as defined in Article 5.7 of the CBA, and, therefore, it warranted progressive discipline instead of discharge from employment.

In support of their Motion to Dismiss, the NMLA Defendants argue that Plaintiff "admits" that she was discharged for gross misconduct, and they construe Plaintiff's Complaint to allege that because she was being disciplined for conduct other than gross misconduct at the time of her discharge, she could not also be disciplined—and discharged—for gross misconduct. (Doc. 16 at 10.) The Court does not construe Plaintiff's allegations as submitting such a theory. Although Plaintiff alleges that she was given a discharge notice which cited gross misconduct, concealment or intentional destruction of client records or documents, and job-related willful endangerment of NMLA, its employees, and its clients, as set forth above, Plaintiff refutes the legitimacy of the allegations on which the discharge notice was based, contending that the facts that actually underlay her discharge do not amount to gross misconduct, and that the allegations of concealment or destruction of client records were false and were ultimately abandoned by NMLA. (Doc. 7 at 14-15, 19.) For the reasons discussed in the preceding discussion, the Court recommends that Count I not be dismissed at this stage of the proceedings.

## 2. **Count II**

In Count II of the Complaint, Plaintiff alleges that NMLA violated Article 5.6(b) of the CBA, which prohibits the employer from making any comment about a discharged employee

"other than to confirm the facts and dates of employment, job title, and whether or not the individual is eligible for rehire, if asked."  (Doc. 15-2 at 12; Doc. 7 at 21-21.)  In support of this claim, Plaintiff alleges that she has been interviewed by three prospective employers "who have indicated [a] real interest in hiring her, but who have insisted [on] knowing who her supervisor was at [NMLA], and then have rejected her."  (Doc. 7 at 20.)  She alleges that "[o]n one occasion, the prospective employer told her that they had spoken to" NMLA (she does not allege who at NMLA was involved in this discussion) and that the prospective employer then rejected her.  (Doc. 7 at 21.)  And, Plaintiff alleges, these facts indicate that NMLA is "disparaging and/or trashing" her to prospective employers.  (Doc. 7 at 20-21.)

The NMLA Defendants seek dismissal of Count II on the alternative theories that (1) Plaintiff, having failed to raise this claim in the grievance process, failed to exhaust her administrative remedies and she is, therefore, precluded from raising this claim in the present lawsuit (Doc. 16 at 15); and, alternatively, (2) the allegations supporting this claim are too vague, speculative, and conclusory to state a claim upon which relief can be granted.  (Doc. 16 at 17.) Although the waiver argument is not persuasive, the Court recommends that Count II be dismissed on the ground that the allegations are insufficient to raise a right to relief above the speculative level.

As to the NMLA Defendants' waiver/exhaustion argument, Plaintiff cites *Vaca* for the proposition that that the Union's alleged breach of the duty of fair representation excuses her failure to exhaust her administrative remedies in regard to Count II.  (Doc. 35 at 12.)  In *Vaca*, our Supreme Court held that a "wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair

representation in its handling of the employee's grievance." *Vaca*, 386 U.S. at 186. Here, Plaintiff alleges that she specifically requested that the Union amend her grievance to include a claimed breach of the CBA based on a theory that NMLA was "trashing her to prospective employers" and that the Union failed or refused to pursue this claim in the grievance proceedings. (Doc. 7 at 31.) Assuming that Plaintiff prevails in her breach of the duty of fair representation claim against the Union, dismissal of Count II on the ground that she failed to exhaust her administrative remedies in regard to that claim would, contrary to *Vaca*, leave Plaintiff without a remedy. *Id.* at 185-86 (observing that it would "be a great injustice" to leave an employee remediless where the employee has been prevented from exhausting her contractual remedies by the union's wrongful refusal to process a grievance). Count II should not be dismissed on the ground that Plaintiff failed to raise this claim in the grievance process.

That said, however, to prevail against a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555 (citations omitted). Where the allegations in a complaint "do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has now shown—that the pleader is entitled to relief." *Ashcroft*, 556 U.S. at 679 (alterations omitted) (emphasis added). Here, assuming that the facts in Plaintiff's complaint are true, she has been interviewed by three prospective employers, each of whom expressed interest in hiring her. Each prospective employer insisted on knowing who supervised Plaintiff when she worked at NMLA, and one of the prospective employers spoke with someone at NMLA. None of the prospective employers hired her. Plaintiff concludes, based on these facts, that someone—but it is unclear who—at NMLA has

violated Article 5.6(b)'s prohibition against making any comment about Plaintiff other than to confirm the period of her employment, her job title, and whether she is eligible for rehire.

While the Court acknowledges that it is *possible* that Plaintiff was not hired by one of these prospective employers because an unknown person at NMLA violated Article 5.6(b) of the CBA, it is equally possible (for example) that NMLA indicated that Plaintiff was not eligible for rehire (which is permissible under Article 5.6(b) the CBA), and that this information led that prospective employer to not hire Plaintiff. The fact that Plaintiff was not hired by three prospective employers, one of whom contacted NMLA, does not raise Plaintiff's claim that NMLA violated Article 5.6(b) above the speculative level. *Twombly*, 550 U.S. at 555. The Court recommends that Count II be dismissed.

### B.  The NMLA Defendants' Rule 8(a) Argument

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The NMLA Defendants argue that, in violation of Rule 8(a)(2), Plaintiff's Complaint is too verbose, and that it should be dismissed accordingly. (Doc. 16 at 17-20) In primary support of this argument, NMLA Defendants cite *Frazier v. Ortiz*, an unpublished Tenth Circuit opinion affirming the dismissal of a complaint on the ground that it was "excessively long." No. 06-1286, 2007 WL 10765, at *1 (10th Cir. Jan. 3, 2007).

In *Frazier* a pro se plaintiff, having been ordered to file an amended version of his 149-page, partially-illegible complaint, filed an amended complaint totaling 136 pages of which many pages were "virtually unreadable because the print [was] too light." *Id.* at *1-2. The amended complaint "wast[ed] dozens of pages" listing the 51 individually named defendants at the beginning of the complaint, and again in the relief section, and it contained a "sprawling

chronicle" including substantial unnecessary minute detail of the facts and law that allegedly supported his right to recovery, but which clouded rather than illuminated the basis of those claims. *Id.* at 2. The circumstances here, unlike the circumstances of *Frazier*, do not warrant dismissal for violation of Rule 8(a). [22]

It is true that Plaintiff's Complaint is lengthy (raising only three claims, it contains 161 paragraphs spanning 32 pages), and it is also true that the Complaint is somewhat confusing insofar as it includes several factual allegations that are unnecessary to support her claim, and the allegations of fact are sometimes presented out of chronological order, among other issues identified by the NMLA Defendants. (Doc. 16 at 19.) Despite these deficiencies, however, Plaintiff's Complaint is not so verbose or otherwise defective as to be unintelligible. *See Valencia v. Bd. of Regents*, No. CV 17-00509 RB/SCY, 2017 WL 4325766, at *1 (D. N.M. Sept. 26, 2017) ("[C]omplaints don't need to be perfect. . . . If a case is unintelligible, however, a Court may dismiss the Complaint under Rule 8." (citation omitted)). Consistent with Rule 8(e) of the Federal Rules of Civil Procedure—pursuant to which "[p]leadings must be construed so as to do justice[,]" the Court does not recommend dismissing Plaintiff's Complaint for a violation of Rule 8(a)(2).

## VI.    Motion to Dismiss Filed by Ed Marks Individually and as Director of NMLA

---

[22] Although our Supreme Court has directed courts to hold pro se litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers," Ms. Ortega, a trained and licensed attorney is not entitled to special consideration as was the pro se litigant in *Frazier*. *Haines v. Kerner, 404 U.S. 519,* 520 (contrasting pleadings by pro se litigants with those "drafted by lawyers"). "The obvious reason for according liberal construction to pro se litigants . . . that a typical pro se plaintiff does not have legal training and is 'unskilled in the law'" does not apply in this case. *Tatten v. City & Cty. of Denver*, 730 F. App'x 620, 624–25 (10th Cir. 2018*), cert. denied sub nom. Tatten v. City & Cty. of Denver, Colo.*, No. 18-595, 2019 WL 113177 (U.S. Jan. 7, 2019) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1286, p. 752 (3d ed. 2004)). Indeed, the Tenth Circuit "has repeatedly declined to extend the benefits of liberal construction to pro se pleadings filed by attorneys who have chosen to represent themselves." *Id.* (citing cases).

Plaintiff alleges that the CBA is an agreement between NMLA and the Union. (Doc. 7 at 2.) She does not allege that Mr. Marks in his capacity as Executive Director of NMLA, or as an individual, was a party to the CBA. Mr. Marks argues that Plaintiff's claims against him individually and in his capacity as Executive Director of NMLA must be dismissed on the ground that Mr. Marks was not a party to the CBA and, therefore, he cannot be held liable for breaching that agreement. (Doc. 17 at 5.) The Court agrees.

As a matter of law, Section 301 "can be invoked only by or against a party to the collective bargaining agreement[.]" *United Mine Workers of Am., Dist. 22 v. Roncco*, 232 F.Supp. 865, 867 (D. Wyo. 1964); *Square D Co. v. United Elec. Radio & Mach. Workers of Am.*, 123 F. Supp. 776, 781 (E.D. Mich. 1954) (same). Mr. Marks, in his individual capacity, is not a party to the CBA, thus any claim against him for its breach must be dismissed. Further, although the CBA reflects that Mr. Marks signed the CBA on behalf of NMLA in his capacity as Executive Director, this circumstance does not make Mr. Marks a party to the contract. (Doc. 15-2 at 46.) *Kreischer v. Armijo*, 884 P.2d 827, 831 (N.M. Ct. App. 1994) (citing the Restatement (Second) of Agency § 320 (1958) for the general rule that "an agent for a disclosed principal is not a party to any contract entered into on behalf of the principal"). Nor can a corporate officer be sued as an "employer" under a collective bargaining agreement. *Antol v. Esposto*, 100 F.3d 1111, 1119-20 (3rd. Cir. 1996); *see also Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1212 (5th Cir. 1980) (recognizing that Section 301 claims for breach of collective bargaining agreements are not viable against employees of corporate organizations). Instead, to the extent that Plaintiff's claims are premised on conduct undertaken by Mr. Marks in his official capacity as NMLA's Executive Director, any such conduct is imputed to NMLA. *Albuquerque Concrete Coring Co., Inc. v. Pan Am. World Servs., Inc.*, 879 P.2d 772, 778 (N.M. 1994)

("When a corporate agent with managerial capacity acts on behalf of the corporation. . . his acts are the acts of the corporation[.]"); *Wirth v. Sun Healthcare Group, Inc.*, 389 P.3d 295, 306 (N.M. Ct. App. 2016) ("A corporation can act only through its officers and employees, and any act or omission of an officer of a corporation, within the scope or course of his or her employment, is an act or omission of the corporation."). Accordingly, the Court recommends that Plaintiff's claims against Mr. Marks in his individual capacity and in his capacity as NMLA's Executive Director should be dismissed.

### VII.   Plaintiff's Motion for Leave to File a Surreply Should be Denied

Plaintiff seeks leave of the Court to file a surreply to the Union's Motion to Dismiss. (Doc. 47.) "A surreply is appropriate and should be allowed where new arguments are raised in a reply brief." *Walker v. THI of N.M. at Hobbs Ctr.*, No. CIV. 09-0060 JB/KBM, 2011 WL 2728344, * 1 (D. N.M. July 6, 2011). Defendants oppose Plaintiff's motion to file a surreply on the ground that the Union Defendants' reply did not raise any new arguments. (Doc. 48; Doc. 49.) The Court, having reviewed the parties' briefs, including Plaintiff's proposed surreply, recommends that Plaintiff's motion to file a surreply be denied summarily on the ground that the Union's reply does not raise any new arguments and Plaintiff's proposed surreply is superfluous and in any event does not raise any issues that, even if considered, would change this Court's analysis.

### VIII.   Conclusion

For the reasons stated herein the Court recommends that:

(1) Defendants Union, Borks, Deane and Clark's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 15) should be **Granted** insofar as it seeks dismissal of Plaintiff's claims against Donis Borks, Alicia

Clark, and Gordon Deane in their individual capacities; it should be **Denied** to the extent that it seeks dismissal of Plaintiff's claim that the Union breached its duty of fair representation;

(2) ) the Motion to Dismiss Plaintiff's Claims Against New Mexico Legal Aid & Ed Marks and Memorandum Brief in Support (Doc. 16) should be **Denied** insofar as it seeks dismissal of Count I; and it should be **Granted** insofar as it seeks dismissal of Count II;

(3) the Motion to Dismiss Plaintiff's Claims Against Ed Marks, Individually and as Director of New Mexico Legal Aid, Inc., and Memorandum Brief in Support (Doc. 17) should be **Granted**; and

(4) Plaintiff's Motion for Leave to File Surreply to Union Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 47) should be **Denied**.

_____
**KIRTAN KHALSA**
**United States Magistrate Judge**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**