**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MINA ORTEGA,

       Plaintiff,

  vs.                              Civ. No. 18-111 MV/KK

NEW MEXICO LEGAL AID, INC. *et al.*,

       Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL UNION

THIS MATTER is before the Court on Plaintiff's Motion to Compel Responses to Plaintiff's Second Discovery Requests to Union (Doc. 242), filed June 10, 2020. Plaintiff filed a Notice of Errata relating to the motion on June 11, 2020, (Doc. 243); Defendant Siempre Unidos en Progreso, a unit of National Organization of Legal Service Workers (NOLSW)/UAW Local 2320 International United Auto Workers, AFL-CIO ("Union") filed a response in opposition to the motion on June 23, 2020, (Doc. 247); and, Plaintiff filed a reply in support of the motion on July 10, 2020. (Doc. 250.) The Court, having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, FINDS that the motion is well-taken in part and should be GRANTED IN PART and DENIED IN PART as set forth below.

Pursuant to Federal Rule of Civil Procedure 33, a party may serve on any other party interrogatories "relat[ing] to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Similarly, pursuant to Rule 34, a party may request that any other party produce designated documents or electronically stored information ("ESI") in the other party's possession, custody, or control that concern any matter within the scope of Rule 26(b). Fed. R. Civ. P. 34(a).

Rule 26(b), in turn, permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Factors the Court should consider in determining whether discovery is "proportional to the needs of the case" include:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* "The court's responsibility, using all the information provided by the parties, is to consider these . . . factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26(b)(1), 2015 Amendment, Advisory Committee Notes.

In the motion presently before the Court, Plaintiff seeks an order compelling the Union to: (a) answer Instruction E and Interrogatories Nos. 8 and 10 of Plaintiff's First Set of Interrogatories to Union more fully; (b) verify the Union's Amended Responses to Plaintiff's First Set of Interrogatories to Union; and, (c) respond more fully to Requests for Production Nos. 10 and 11 of Plaintiff's Second Request for the Production of Documents to Defendant Union. (Docs. 242, 243.)

1.    **Instruction E**

According to the parties, Instruction E directs the Union to state the name, address, and telephone number of the person(s) who supplied the Union with the information in its answers to Plaintiff's First Set of Interrogatories to Union. (Doc. 242 at 3; Doc. 247 at 8-9.) In her motion, Plaintiff contends that the Union "did not comply" with this instruction, "but only made a general statement" in a letter from its counsel "that Donis [Borks] assisted in the preparation of all of the

2

interrogator[y answers], and Alicia Clark assisted in the preparation of the responses that mention her actions and her time as Grievance Chair." (Doc. 242 at 3.)  In response, the Union contends that the information its counsel provided is adequate when read in conjunction with its Initial Disclosures, in which it advised Plaintiff that Mr. Borks and Ms. Clark "could be contacted care of Union's counsel." (Doc. 247 at 9.)

As an initial matter, the Court notes that Plaintiff did not attach a copy of her First Set of Interrogatories to Union to her motion to compel or Notice of Errata. (*See generally* Doc. 242 *and* Doc. 243 at 4-18.)  She did attach to her Notice of Errata a copy of the Union's Amended Responses to Plaintiff's First Set of Interrogatories to Union; however, this document does not include Instruction E. (*Id.*)  As such, Plaintiff's motion does not comply with Local Civil Rule 37.1, which requires "[a] party seeking relief pursuant to Fed. R. Civ. P. 26(c) or 37(a) [to] attach to the motion a copy of . . . the interrogatory [or] request for production or inspection" at issue. D.N.M. LR-Civ. 37.1(a).  Plaintiff's failure to comply with Rule 37.1 prevents the Court from analyzing the precise language of Instruction E in determining whether the Union has answered it adequately.  The Court must therefore rely on the parties' descriptions of the instruction, which are fortunately substantially similar. (*Compare* Doc. 242 at 3 *with* Doc. 247 at 8-9.)

Based on these descriptions, the Court concludes that the Union has provided Plaintiff with adequate information in response to Instruction E.  In particular, the Court finds that the Union has given Plaintiff sufficient information to enable her to identify which interrogatories Ms. Clark assisted in answering.  However, the Court notes that interrogatories must be answered "under oath," Fed. R. Civ. P. 33(b)(3); and, it does not appear that the Union has verified the supplemental information its counsel provided in response to Instruction E.  Thus, although the Court will not compel the Union to provide Plaintiff with any additional information responsive to this

3

instruction, it will order the Union to verify the supplemental information its counsel has already provided.

## 2.    __Interrogatory No. 8__

In Interrogatory No. 8, Plaintiff asks the Union to "[s]tate the name, address, and telephone number of each and every person [the Union][1] will call to testify at the trial of this case, and as to each person named state all facts to which that person will testify."  (Doc. 243 at 11.)  In her motion, Plaintiff claims that the Union's answer to this interrogatory improperly provided "topics" about which the witnesses will testify, and not "facts."  (Doc. 242 at 3.)  The Union responds that Plaintiff's motion "is not clear" regarding how the Union's answer is insufficient.  (Doc. 247 at 9.)  Moreover, the Union concedes that Plaintiff eventually changed the phrase "all facts" to "principal and material facts"; however, "[t]o the extent she viewed that change as a clarification of Interrogatory [No.] 8, she did not give the Union a reasonable time to respond" to the clarification before filing her motion to compel.  (*Id.* at 9 n.6.)

The Court agrees that, as written, Interrogatory No. 8 is vague, overbroad, unduly burdensome, and disproportionate to the needs of the case in seeking "all facts" about which each of the Union's witnesses will testify.  The Court further finds that the Union interpreted and answered this interrogatory reasonably by describing all factual "topics" about which its witnesses will testify.

The Court also agrees that Plaintiff waited too long to offer her clarification regarding principal and material facts for the Court to require the Union to supplement its answer on that basis.  In its response to Plaintiff's motion to compel, the Union described the events leading up

---

[1] As written, Interrogatory No. 8 refers to New Mexico Legal Aid, Inc.'s witnesses rather than the Union's.  (Doc. 243 at 11.)  However, the parties appear to agree that this is a typographical error and that Plaintiff meant to ask about the Union's witnesses.  (*Id.* at 11-12; *see also* Doc. 242 at 3, 16; Doc. 247 at 9.)

4

to the filing of Plaintiff's motion in considerable detail.  (Doc. 247 at 2-6.)  The most salient points

for purposes of Interrogatory No. 8 are:  (a) Plaintiff first offered her clarification regarding

principal and material facts in a letter she e-mailed to the Union's counsel on the afternoon of

Sunday, June 7, 2020; and, (b) Plaintiff filed her motion to compel on the morning of Wednesday,

June 10, 2020.[2]  (Doc. 242 at 16.)  It would be patently unreasonable for the Court to require the

Union to supplement its answer based on a modification made two business days before Plaintiff

filed her motion to compel, even assuming the modification rendered the interrogatory reasonably

clear and proportional to the needs of the case, which it does not.[3]  The Court will therefore deny

Plaintiff's motion to compel the Union to provide any additional information in response to

Interrogatory No. 8.

**3.**      **Interrogatory No. 10**

Interrogatory No. 10 asks the Union to "describe in detail and with specificity the facts [it]

will introduce at . . . trial . . . to support" each of the affirmative defenses asserted in its answer to

Plaintiff's Amended Complaint, and to provide the name, address, and telephone number of each

witness who will testify regarding the affirmative defense.  (Doc. 243 at 12.)  Plaintiff contends

that, again, she subsequently "corrected 'the facts' with [']the principal and material facts[']" in

this interrogatory.[4]  (Doc. 242 at 4.)  According to Plaintiff, "[t]he Union's answer provides a

---

[2] Although Plaintiff's letter to the Union's counsel is dated June 5, 2020, she concedes that she did not successfully e-mail its substance until June 7, 2020.  (Doc. 242 at 15; Doc. 250 at 2-3.)

[3] Plaintiff's citation to *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403 (D. Kan. 1998), does not convince the Court that Interrogatory No. 8, as modified, is reasonably clear and proportional.  *Hiskett* holds that interrogatories may "properly ask for the 'principal or material' facts which support an allegation or defense."  *Id.* at 405.  However, the decision expressly limits this holding to "[i]nterrogatories which do not encompass every allegation, or a significant number of allegations" in the responding party's pleadings.  *Id.*  Here, Plaintiff asks for the principal and material facts to which *all of the Union's witnesses* will testify, which clearly encompasses most or all of the Union's defenses.

[4] In her letter to the Union's counsel e-mailed on June 7, 2020, Plaintiff offered to modify Interrogatory No. 8, but not Interrogatory No. 10, to ask for "principal and material facts."  (Doc. 242 at 16.)  It is thus unclear whether Plaintiff actually offered to modify Interrogatory No. 10 before filing her motion to compel.

narrative of why Plaintiff's complaint should be dismissed, but fails to provide facts." (*Id.*)  In response, the Union argues that "a narrative response that contain[s] facts" should "count as a factual response." (Doc. 247 at 9.)

The Union's answer to Interrogatory No. 10 includes nearly three pages of mostly factual narrative regarding its defenses. (Doc. 243 at 12-15.)  The Court finds that this answer is sufficiently responsive to Interrogatory No. 10.  Plaintiff appears to believe that the Union should have listed each of its affirmative defenses separately, and then separately described the facts supporting each such defense.  However, if Plaintiff wanted nine separate answers, *i.e.*, one for each of the Union's affirmative defenses, (*see* Doc. 65 at 13), she should have asked nine separate interrogatories.  As it is, the Court finds that Plaintiff, as an attorney, can reasonably ascertain which facts may apply to which affirmative defenses, and declines to order the Union to break down its answer to Interrogatory No. 10 as Plaintiff wishes.

**4.      Verification of Amended Responses**

In her Notice of Errata, Plaintiff observes that the Union did not verify its Amended Responses to Plaintiff's First Set of Interrogatories to Union.  (Doc. 243 at 2-3.)  The Union responds that it verified its original answers to Plaintiff's First Set of Interrogatories to Union and believed that this verification was sufficient because its amended answers included few changes and no "significant" ones.  (Doc. 247 at 10 & n.8.)  As noted above, interrogatory answers must be made "under oath." Fed. R. Civ. P. 33(b)(3).  However few and minor the Union's substantive changes to its answers were, Plaintiff is entitled to have them verified.  The Court will therefore order the Union to verify its Amended Responses to Plaintiff's First Set of Interrogatories to Union.

**5.      Request for Production No. 10**

Request for Production No. 10 asks the Union to produce all documents and ESI "having to do with Plaintiff's discharge from [New Mexico Legal Aid, Inc. ("NMLA")] and Union's grievance filed therefor."[5]   (Doc. 243 at 21.)   In her motion, Plaintiff argues that the Union's response to this request is incomplete because it has not produced responsive documents in Alicia Clark's possession.   (Doc. 242 at 4-5.)   The Union responds that it does not have to produce documents in Ms. Clark's possession, because Ms. Clark "resigned as grievance chair in 2014" and "is not currently an agent of the Union."   (Doc. 247 at 11-12.)   However, the Union cites to no authority for the proposition that an organization need never produce documents in a former agent's possession, nor does it present any argument regarding its practical ability to obtain responsive documents from Ms. Clark.   (*See id.*)

Rule 34 requires the production of responsive documents and ESI in the responding party's "possession, custody, *or control*."   Fed. R. Civ. P. 34(a)(1) (emphasis added).

> Courts have broadly construed control as 'the legal right, authority, *or practical ability* to obtain the materials sought upon demand[.]'   If a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it.

*Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 397 (D.N.M. 2018) (emphasis added) (alterations omitted).   "A party seeking production of documents bears the burden of establishing the opposing party's control over those documents."   *United States v. 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. 572, 590 (D.N.M. 2015).   However, "records which are normally kept in the business of the party . . . are presumed to exist, absent a sworn denial, and a prima facie case of control is all that must be established to justify issuance of the order" requiring their production.   *Norman v. Young*, 422 F.2d 470, 472–73 (10th Cir. 1970).

---

[5] Interestingly, Plaintiff requests these documents by first referring to an interrogatory in which she asks the Union to identify the "containers" in which it keeps documents and ESI regarding her discharge and discharge grievance, and then requesting that the Union produce the specified "content" of these "containers."   (Doc. 243 at 6, 21.)

Courts have found that, in some circumstances, an organization may have control over documents in the possession of a former agent. *See, e.g., Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394 (AJN) (BCM), 2016 WL 5408171, at *5–*7 (S.D.N.Y. Sept. 27, 2016) (citing cases); *In re Domestic Air Transp. Antitrust Litig.*, 142 F.R.D. 354, 356 (N.D. Ga. 1992); *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977). Also, "[s]ome courts have required an employer to contact former employees to determine whether they took responsive documents when they changed employment." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 627 (D. Colo. 2007); *see Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341–42 (S.D.N.Y. 2005) ("Analyzing the practical ability of corporations to obtain work-related documents from former employees, courts insist that corporations, at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession."). Ultimately, whether an organization retains sufficient control over a former agent to be required to produce documents in the former agent's possession is a case-specific and "fact-intensive" question. *Royal Park Investments SA/NV*, 2016 WL 5408171 at *9.

Here, it is apparent that the Union retains some measure of control over Ms. Clark, even though she is no longer the Union's grievance chair. The Court could speculate regarding why this might be, *e.g.*, because she acted as the Union's agent "with respect to the events or transactions at issue in the litigation," or because she has a "continuing economic relationship" with the Union as an employee of NMLA. *Id.* at *6. However, such speculation is beside the point; whatever the reason, the Union's continuing control is demonstrated by the fact that Ms. Clark can be contacted in care of the Union's counsel and was one of two individuals who supplied the Union with the information in its interrogatory answers. (*See, e.g.,* Doc. 247 at 9.) In these

8

circumstances, it seems highly likely that, if the Union asked her to, Ms. Clark would give it copies of any documents and ESI in her possession regarding Plaintiff's discharge and discharge grievance.  At the very least, these circumstances justify requiring the Union to ask Ms. Clark for such documents and ESI.  The Court will therefore compel the Union to ask Ms. Clark, in good faith, to provide it with copies of any documents and ESI in her possession responsive to Request for Production No. 10, and to produce to Plaintiff any documents it obtains from Ms. Clark pursuant to this good-faith request.

**6.      Request for Production No. 11**

Finally, Request for Production No. 11 asks the Union to produce documents and ESI "having to do with the grievance filed by the Union concerning NMLA's calculation and/or application and/or handling of attorney comp time or flex time."[6]  (Doc. 243 at 21-22.)  In her motion, Plaintiff contends that the Union has produced only one document responsive to this request and asserts that the Union should have many more.  (Doc. 242 at 8.)  The Union responds that, having received clarification from Plaintiff regarding the specific grievance to which the request refers, it has agreed to produce any responsive documents it is able to locate.  (Doc. 247 at 12; *see* Doc. 247-8 at 5.)  The Court will therefore order the Union to make a good-faith effort to locate and produce documents and ESI in its possession, custody, or control responsive to Request for Production No. 11 within the time specified below.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel Responses to Plaintiff's Second Discovery Requests to Union (Doc. 242) is GRANTED IN PART and DENIED IN PART as follows:

---

[6] Again, Plaintiff requests these documents by first referring to an interrogatory in which she asks the Union to identify the "containers" in which it keeps documents and ESI regarding the grievance at issue, and then requesting that the Union produce the specified "content" of these "containers."  (Doc. 243 at 8, 21-22.)

1.    The motion is GRANTED insofar as the Union is hereby ordered to:

   a.    Verify the supplemental information it has provided to Plaintiff in response to Instruction E of Plaintiff's First Set of Interrogatories to Union;

   b.    Verify its Amended Responses to Plaintiff's First Set of Interrogatories to Union;

   c.    Ask Alicia Clark to provide it with copies of any documents and ESI in her possession responsive to Request for Production No. 10 of Plaintiff's Second Request for the Production of Documents to Defendant Union, and produce copies of any documents and ESI it obtains from Ms. Clark as a result of this request; and,

   d.    Search for any documents and ESI in its possession, custody, or control responsive to Request for Production No. 11 of Plaintiff's Second Request for the Production of Documents to Defendant Union, and produce copies of any responsive documents and ESI it locates.

The Union is to supplement its responses to Plaintiff's First Set of Interrogatories to Union and Second Request for the Production of Documents to Defendant Union in accordance with this Order no later than **Wednesday, August 5, 2020**.

2.    In all other respects, Plaintiff's motion is DENIED.

3.    The Court declines to apportion the expenses the parties incurred in connection with the motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(C).

IT IS SO ORDERED.

_____

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE