IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MINA ORTEGA,**

      **Plaintiff,**

v.                                                            Civ. No. 18-111 MV/KK

**SIEMPRE UNIDOS EN PROGRESO, a
Unit of National Organization of Legal
Services Workers ("NOLSW"),**

      **Defendant.**

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

THIS MATTER is before the Court on Plaintiff Mina Ortega's Motion to Alter or Amend Order Denying Motion to Designate Settlement Proceeds as Back Pay and for Clarification and to Enlarge the Exhibit Page Limit,[1] (Doc. 284), filed May 12, 2021. Defendant Siempre Unidos en Progreso, a unit of National Organization of Legal Service Workers (NOLSW)/UAW Local 2320 International United Auto Workers, AFL-CIO ("Union") responded in opposition on May 20, 2021, and Plaintiff filed a reply brief on June 10, 2021.[2] (Docs. 286, 289.) Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, the Court FINDS that the motion is not well-taken and should be DENIED.

### I. BACKGROUND

#### A. Procedural and Factual Background

Plaintiff Mina Ortega was employed by New Mexico Legal Aid ("NMLA") from October 27, 2008, until January 30, 2014, when she was terminated. (Doc. 7 ¶¶ 9, 14.) On February 2,

---

[1] By Order dated May 18, 2021, the Court granted leave for Plaintiff to exceed page limits. (Doc. 285 at 2.)

[2] Plaintiff also filed a Notice of Errata on December 10, 2021, to correct "typing errors and/or inadvertent omissions and/or make clarifications" in her reply brief. (Doc. 290.)

2018,[3] she brought this action against NMLA and the Union, alleging wrongful termination and breach of contract by NMLA and breach of the duty of fair representation in the post-termination grievance process by the Union. (Doc. 1; Doc. 7 ¶¶ 76–161.)

On or around September 4, 2020, Plaintiff and the Union agreed to terms to settle Plaintiff's claims against the Union. (Doc. 271-1 at 5; *see also* Doc. 263-1 at 2–3.) On September 9, 2020, the Union informed the Court that Plaintiff and the Union had "reached a settlement" and were "in the process of reducing the terms of the settlement to a formal settlement agreement." (Doc. 255 at 1; *see also* Doc. 253.) On September 18, 2020, Plaintiff and NMLA filed an Unopposed Joint Motion to Dismiss Plaintiff's Claims Against New Mexico Legal Aid, Inc. (Doc. 259.) And on September 24, 2020, the Court dismissed Plaintiff's claims against NMLA with prejudice. (Doc. 260.)

Despite the general agreement between Plaintiff and the Union to settle the case, the parties had difficulty agreeing on the specific language of the settlement agreement. (*See* Doc. 263-1 at 3–4 ("Despite months of effort, the parties have been unable to reach agreement on comprehensive settlement language.").) It was not until January 19, 2021, that the parties agreed upon a finalized Settlement Agreement. (*See* Docs. 269, 270.) The Union signed the agreement on January 20, 2021, and Plaintiff signed on February 9, 2021. (Doc. 271-1 at 7; *see also* Doc. 280 at 4–7.) On

---

[3] Plaintiff initially brought an action based on her termination against NMLA and the Union in 2014. *See Ortega v. New Mexico Legal Aid, Inc.*, No. 14-628, 2015 WL 12661927 (D.N.M. Feb. 17, 2015), *aff'd,* 643 F. App'x 774 (10th Cir. 2016). That action was dismissed without prejudice for failure to exhaust the mandatory grievance procedure set forth in the applicable Collective Bargaining Agreement. *Id.* at *7–*8. After exhausting her administrative remedies, Plaintiff filed this case.

February 17, 2021, after expiration of the revocation period,[4] the Settlement Agreement became effective and enforceable. (Doc. 280 at 9.)

Under the Settlement Agreement, Plaintiff agreed to release the Union from all claims related to her termination in exchange for a settlement payment. (Doc. 271-1 at 5.) Within thirty days of execution, the settlement amount would be transferred to the escrow account of the Union's local counsel, and unless Plaintiff directed otherwise, a check would be issued payable to Plaintiff. (*Id.* at 6.) A signed Stipulation of Dismissal would be included with the check, and within five days of receiving payment, Plaintiff would file the document. (*Id.* at 7; Doc. 280 at 8.)

On February 19, 2021, after execution of the Settlement Agreement, the settlement amount was placed in local counsel's escrow account. (Doc. 273-1 at 2.) However, Plaintiff has not accepted payment of the funds, and closing documents have not been filed.

At issue is a dispute over how the settlement funds should be characterized. The Settlement Agreement contains a provision allowing Plaintiff to direct all or a portion of the settlement amount to her 403(b) account[5] (the "403(b) provision"). This provision states:

> Within fifteen (15) business days from the date of execution of this agreement, Ortega may request in writing that all or a portion of the settlement amount be directed to her 403(b) account with consent of the 403(b) plan administrator, and the Union will take all efforts to comply with that request to the extent permitted by law.

(AR 271-1 at 6.)

---

[4] Under 29 U.S.C. § 626(f)(1)(G), Plaintiff had the right to revoke her acceptance of the settlement agreement any time within seven days of signing it. (*See also* Doc. 280 at 9.)

[5] The 403(b) account at issue is NMLA's 403(b) Thrift Plan For New Mexico Legal Aid, Inc., a tax-sheltered retirement savings plan NMLA provided to its employees. (Doc. 271 at 23–30; Doc. 271-1 at 1–3.) A 403(b) plan is similar to a 401(k) plan but is limited to 501(c)(3) organizations. *See* 26 U.S.C. § 403(b).

Plaintiff has explained that she would like a portion of the settlement amount to be deposited into her 403(b) account so that she can "defer the paying [of] taxes until she withdraws the money[.]" (Doc. 271 at 15). But the financial institution holding Plaintiff's 403(b) account will only allow a deposit of funds if either the settlement agreement "specifies that all or part of the payment represents back pay," or "there is a court order that allocates all or a portion of the settlement payment to back pay." (Doc. 271-1 at 17.)

The Settlement Agreement does not expressly state that all or part of the payment represents back pay, so on March 2, 2021, Plaintiff filed a motion asking the Court to designate it as such. (*See* Doc. 271; Doc. 279 at 14 ("The Union has refused to agree to allocate the wage amount, so I need a Court order.").) In her motion, Plaintiff asked the Court to enter an order "allocating a portion of the settlement amount due [to] her from the Union as back pay." (Doc. 271 at 1.) On April 14, 2021, the Court denied Plaintiff's motion. (Doc. 282.)

### B. The Court's Denial of Plaintiff's Motion to Designate Funds as Back Pay

In her motion to designate funds as back pay, Plaintiff argued that the settlement payment is "in essence a self-imposed apportionment of the Union's portion of Plaintiff's damages." (Doc. 271 at 10.) And because Plaintiff had sought "compensatory damages for lost benefits and monetary losses because of her termination," (*id.* at 8), the settlement amount should be characterized as back pay. The Court rejected this argument, finding that "Plaintiff has proffered no valid factual or legal basis for the relief she seeks." (Doc. 282 at 3.)

The Court explained that "[t]he Settlement Agreement between Plaintiff and the Union is a contract." (*Id.*) And as such, the terms of that contract—and not Plaintiff's complaint—control. The Settlement Agreement states that the settlement payment is "consideration for Ortega's release of any and all claims against the Union as set forth herein." (Doc. 271-1 at 6.) It does not designate

4

any portion of the payment as back pay or compensation for lost wages or benefits. (Doc. 282 at 1–2). Thus, the settlement amount would only be back pay if the terms of the Settlement Agreement were changed. But the Court cannot modify the terms of the agreement, because under New Mexico law, "the court may not alter or fabricate a new agreement for the parties." (*Id.* at 3 (quoting *Ponder v. State Farm Mut. Auto. Ins. Co.*, 12 P.3d 960, 964 (N.M. 2000).)

Additionally, the Court held that Plaintiff had not identified a legal basis that would allow the Union to direct the settlement payment into her 403(b) account. Plaintiff argued that the funds could be deposited under 26 C.F.R. § 1.415(c)-2(g)(8), which defines back pay as "[p]ayments awarded by an administrative agency or court or pursuant to a bona fide agreement by an employer to compensate an employee for lost wages." But the Court explained that § 1.415(c)-2(g)(8) "simply does not apply to the settlement proceeds at issue." (Doc. 282 at 4.) "To state the obvious, the Court has awarded Plaintiff nothing; and, the Union is not and never has been Plaintiff's employer." (*Id.*)

## II. LEGAL STANDARD

"[D]istrict courts generally remain free to reconsider their earlier interlocutory orders" and may "select the standard of review" they use to do so.[6] *Kruskal v. Martinez*, 429 F. Supp. 3d 1012, 1024 (D.N.M. 2019) (quoting *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007)). Factors to be considered include how thoroughly the prior ruling addressed the point(s) the movant is challenging, and whether the movant has presented new controlling authority, new evidence, a "good reason" for not presenting new evidence the first time around, and/or a "clear indication"

---

[6] Plaintiff has moved for reconsideration under Federal Rule of Civil Procedure 59(e). (Doc. 284 at 1.) However, Rule 59(e) only applies to the entry of a judgment, which the Court's Order was not.

that the prior ruling was erroneous. *Id.* at 1024–25. "The court analyzes motions to reconsider by picking up where it left off in the prior ruling — not by starting anew" and "[t]he deck is stacked against a movant for reconsideration," who bears the burden of persuading the Court "that it should change its prior ruling." *Id.* at 1026.

### III. Discussion

#### A. Plaintiff has not shown that reconsideration is appropriate

Plaintiff makes two new arguments on reconsideration: 1) that by agreeing to the 403(b) provision, the Union conceded "that all or part of the settlement amount it owes Plaintiff is/are wages"; and 2) that the settlement payment is back pay under *Bowen v. U.S. Postal Service*, 459 U.S. 212 (1983). (Doc. 289 at 4–6, 9.) Neither argument persuades the Court that its prior ruling is incorrect.

##### 1. *Plaintiff cannot show that, under the Settlement Agreement, the settlement amount is characterized as back pay*

Plaintiff argues that because the Union understands that only employer compensation may be deposited into a 403(b) account, by agreeing to the 403(b) provision, the Union conceded that "all or part of the settlement amount it owes Plaintiff is/are wages." (Doc. 289 at 9.) But Plaintiff's argument disregards the plain language of the 403(b) provision. First, as discussed above, the Union has never employed Plaintiff and nothing in the agreement suggests that there is an employer-employee relationship between the parties or specifies that the settlement amount is compensation for lost wages or benefits. Next, under the 403(b) provision, the Union is only required to "take all efforts to comply" with Plaintiff's request to direct funds into her 403(b) account "to the extent permitted by law." (Doc. 271-1 at 6.) It is not an unconditional agreement to deposit the funds, as Plaintiff suggests.

Finally, had the parties agreed that there was an employer-employee relationship and that the settlement funds included wages, the Union would likely be responsible for employment tax withholdings. *See, e.g.*, *Rivera v. Baker W., Inc.*, 430 F.3d 1253, 1259 (9th Cir. 2005). But included in the agreement is a provision stating, "[t]he parties understand that the Settlement Amount shall be made to Ortega without deduction of any taxes or other withholding . . ." (Doc. 271-1 at 6.) This provision indicates that there was no agreement for the settlement payment to include back pay. *Cf. Pipitone v. United States*, 180 F.3d 859, 864 (7th Cir. 1999) ("The withholding of taxes is a significant factor suggesting the employer intended a payment to constitute severance pay.")

Furthermore, under New Mexico law, a court may "consider extrinsic evidence" to determine if a contract contains an ambiguity, *Concerned Residents of S.F. N. v. Santa Fe Ests., Inc.*, 182 P.3d 794, 807 (N.M. 2008) (quoting *Hansen v. Ford Motor Co.*, 900 P.2d 952, 955 (N.M. 1995)), and the extrinsic evidence before the Court contradicts Plaintiff's assertion. The parties discussed the 403(b) provision prior to finalizing the Settlement Agreement, (*see, e.g.*, Doc. 264 at 3–5, 14; Doc. 271-1 at 18–19; Doc. 289 at 21–23), and the record shows that Plaintiff wanted the 403(b) provision to include a citation to 26 C.F.R. § 1.415(c)-2(g)(8), which would specify that the funds were back pay. (*See* Doc. 264 at 3–5 & n.3, 4.) The Union refused to add the requested citation to the provision. (*Id.*; *see also* Doc. 271-1 at 6.)

Additionally, after the finalization of the agreement but prior to Plaintiff's signing, the Union sent an email to Plaintiff explaining that "the settlement payment is not backpay. You were never on the Union's payroll. The Union has never agreed to pay you backpay. It has agreed to send you a settlement payment in exchange for a release and dismissal of your lawsuit." (*Id.* at 19.) The Union further stated that it believed depositing the settlement amount in Plaintiff's 403(b)

7

account as employer compensation was illegal. (*Id.* at 18 ("I hope . . . you understand why I think your scheme to avoid paying taxes on the settlement is illegal.").)

Finally, the extrinsic evidence supports the plain text reading that the 403(b) provision only pertains to where the funds are to be directed and not to their characterization. The record shows that the Union had no objection to directing the funds to Plaintiff's account and only objected to designating the funds as back pay. In an email on which Plaintiff was copied, the Union explained that it "is fine" directing the payment to Plaintiff's 403(b) account but is "not willing to help her launder [the funds] . . . to evade her taxes." (Doc. 289 at 22.) The extrinsic evidence does not support a finding of ambiguity in the 403(b) provision, and the terms of the agreement do not support Plaintiff's contention that the Union agreed that the settlement payment is or includes back pay.

> 2. *Plaintiff has not shown that the Union is legally permitted to contribute to her 403(b) account*

Plaintiff also argues that the settlement payment should be categorized as back pay under *Bowen v. U.S. Postal Service*, 459 U.S. 212 (1983). (Doc. 289 at 4–6.) In *Bowen*, the district court determined that Bowen's employer had wrongfully terminated him and his union had breached its duty of fair representation. 459 U.S. at 215–16. The district court found both defendants responsible for Bowen's lost wages and benefits and apportioned damages between the two. *Id.* at 216–17. On appeal, the Fourth Circuit affirmed the district court's finding and apportionment of fault but overturned the award against the union. *Id.* at 17. The Fourth Circuit found that as a matter of law, the union could not be responsible for any lost wages because it had never been Bowen's employer. *Id.* The Supreme Court reversed and remanded. *Id.* at 230. The Supreme Court held that

because the union was found responsible for increasing the damages Bowen suffered, it "should bear its portion of the damages." *Id.* at 223.

Plaintiff contends that the settlement amount represents the portion of Plaintiff's claimed damages that are attributable to the Union, and thus, under *Bowen*, the payment represents back pay. (Doc. 289 at 6). But in *Bowen*, the district court found liability and apportioned damages, and the Court of Appeals affirmed. *Bowen*, 459 U.S. at 215–17. Here, Plaintiff voluntarily dismissed her claims against NMLA and released her claims against the Union. (*See* Docs. 259, 260; Doc. 271-1 at 7.) Thus, Plaintiff's claims have been resolved at the pre-trial stage with no findings of fact made. Moreover, the Settlement Agreement contains a "Non-admission of Liability" provision, which states: "By entering into this Agreement and payment of the Settlement Amount set forth herein, the Union does not admit liability and expressly denies liability for the claims made by Ortega in her lawsuit against it." (Doc. 280 at 8.) Without findings of fact or an admission of liability, there is no support for Plaintiff's assertion that the settlement payment is the Union's portion of Plaintiff's alleged lost wages. *Bowen* does not suggest otherwise.[7]

---

[7] Plaintiff also argues that *San Francisco Baseball Associates L.P. v. United States*, 88 F. Supp. 2d 1087 (N.D. Cal. 2000), supports reconsideration. (*See* Doc. 284 at 5–7; Doc. 289 at 1–4.) In *San Francisco Baseball Associates*, the Northern District of California found that payments made to baseball players for loss of mobility from a settlement fund administered by the player's union constituted wages under the Federal Insurance Contribution Act ("FICA") and the Federal Unemployment Tax Act ("FUTA"). *San Francisco Baseball Assocs.*, 88 F. Supp. 2d at 1094. However, *San Francisco Baseball Associates* considered the characterization of the payments under FICA and FUTA, and "[c]ourts have broadly construed the boundaries of the employer-employee relationship" under FICA and FUTA so as "to effect [the statutes'] remedial purposes." *Id.* at 1091; *see also id.* ("it is consistent with the remedial purposes of FICA and FUTA to define the employment relationship broadly and to hold the employers contributing to the Settlement Account responsible for [employment] taxes."). Additionally, the decision in *San Francisco Baseball Associates* rests on a fact-specific analysis of the settlement fund at issue. Specifically, the express purpose of the settlement fund was to compensate players for lost wages, and all the funds had been contributed by the baseball clubs and tracked so that each club could pay employment taxes. *Id.* 1093–94.

*San Francisco Baseball Associates* rests on facts not found here and involves a different and inapplicable statutory framework. Under FICA and FUTA, the employer-employee relationship and the definition of wages are construed broadly to ensure that employment taxes are properly paid. But the statutes and regulations at issue here serve to limit

"The deck is stacked against a movant for reconsideration[.]" *Kruskal*, 429 F. Supp. 3d at 1026. In her motion for reconsideration, Plaintiff has offered additional argument and legal authority but has still "proffered no valid factual or legal basis for the relief she seeks." (Doc. 282 at 3.) Plaintiff has not met the heavy burden of demonstrating that the Court's previous ruling is incorrect and has not persuaded the Court that its previous ruling should be changed. Plaintiff's motion for reconsideration is denied.[8]

### B. The Court will not require Plaintiff to reimburse the Union or dismiss this action with prejudice

In its opposition to Plaintiff's motion for reconsideration, the Union requests that the Court grant it attorney's fees associated with responding to Plaintiff's motion for reconsideration. (Doc. 286 at 6.) The Union notes that the Settlement Agreement has been executed and argues that Plaintiff is "prejudicing the Union by forcing it to incur costs on a case that has been effectively over" for more than a year. (*Id.*) The Court understands the Union's frustration, but for the reasons explained in the Court's previous order, attorney's fees are not warranted at this time. (*See* Doc. 282 at 7.)

---

deposits into 403(b) accounts to ensure that taxes are not improperly avoided. The Northern District of California's analysis in *San Francisco Baseball Associates* is not relevant or helpful in resolving the issues before the Court.

[8] Plaintiff also requests that the Court "clarify the meaning of its statement" that the provisions of the Settlement Agreement "must at least allow Plaintiff to ask NMLA to consent to the Union directing some part of the settlement proceeds to Plaintiff's 403(b) account *and* to explore with NMLA whether there is a lawful way for the parties to accomplish this end." (Doc. 284 at 7 (quoting Doc. 282 at 6–7) (emphasis in original).) Specifically, Plaintiff asks if the Court's Order allows her to share "the total settlement amount, the amount Plaintiff proposes be put in her 403(b) account, the limitation years to which the back pay relates, whether they represent wages and compensation that would otherwise be included in compensation, and any other information it may request or ask" with NMLA and its counsel without violating the Settlement Agreement's confidentiality clause. (*Id.* at 7–8.) Determining which specific information may disclosed under the Settlement Agreement is well beyond the scope of Plaintiff's motion for reconsideration of the Court's prior order, and it is unnecessary to resolve the present dispute between the parties. Plaintiff's request for clarification is denied.

The Union also argues that the Court should dismiss this case with prejudice for Plaintiff's failure to comply with the Court's Order dated April 15, 2021, which directed the parties to submit dismissal documents no later than May 17, 2021. (Doc. 286 at 4–6 (citing Doc. 283).) In her motion for reconsideration, Plaintiff acknowledges the Order, but argues that she is unable to comply with it because she cannot file the dismissal documents until she receives payment, and she cannot receive payment until her motion for reconsideration is resolved. (Doc. 284 at 7.) The Union responds that Plaintiff could have gone to its local counsel's office "[a]t any time" in order "to pick up the settlement check" or she could have "asked the Union's counsel to have the check sent to her by certified mail, in accordance with the Settlement Agreement." (Doc. 286 at 5.) The Union also notes that the Stipulation of Dismissal has been sitting in its local counsel's office "since February 19, 2021, waiting for Ortega to pick it up for execution and filing." (*Id.*)

Although the parties failed to comply with the Court's Order dated April 15, 2021, dismissal with prejudice is not appropriate at this juncture. Plaintiff has indicated that upon resolution of her motion for reconsideration, she will take receipt of the settlement payment and file closing documents as per the parties' agreement. (*See* Doc. 284 at 7.) The Court has resolved Plaintiff's motion for reconsideration and expects that the parties' Stipulation of Dismissal will be promptly filed. However, if Plaintiff chooses not to file the Stipulation of Dismissal within the time set forth below, the Union may renew its Motion to Dismiss the Lawsuit as Settled and may also request attorney's fees.

### C. The Court will not certify its interlocutory decision for review by the Tenth Circuit

Plaintiff requests that if her motion for reconsideration is denied, the Court "certify its decision for review by the Tenth Circuit Court of Appeals under the collateral order doctrine or as

11

an interlocutory appeal." (Doc. 289 at 12.) The Court interprets this request as one for certification under 28 U.S.C. § 1292(b), which allows district courts to certify an interlocutory order for appellate review if the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The Court finds that the standard under § 1292(b) is not met here. At its core, the issue here is one of contract interpretation. Plaintiff and the Union have executed the Settlement Agreement releasing the Union of all claims, but Plaintiff has asked the Court to resolve a dispute concerning a non-material provision. As discussed above, the parties' dispute is resolved through an application of well-settled New Mexico contract law, and the Court's decision does not turn on a "controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Furthermore, all dispositive aspects of this case have been resolved through settlement or dismissal. (Doc. 271-1 at 7; Doc. 273-1 at 2.) And now that Plaintiff's motion for reconsideration has been decided, all that remains is for the parties to stipulate or move for dismissal—which should occur shortly after the entry of this order. Appellate review is not necessary to "advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Plaintiff's request for certification under § 1292(b) is denied.

## IV. CONCLUSION

Upon consideration of Plaintiff's Motion to Alter or Amend Order Denying Motion to Designate Settlement Proceeds as Back Pay (Doc. 284), and the response and reply thereto, and for the reasons stated above, it is hereby ORDERED that Plaintiff's motion is DENIED. It is further ORDERED that if Plaintiff does not file the agreed-upon Stipulation of Dismissal within ten (10) business days of entry of this Order, the Union may file a renewed motion to dismiss Plaintiff's

claims as settled, in which it may seek reimbursement for attorney's fees incurred in connection with the motion.

    IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE